UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| MICHAEL CORDLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 17-23-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DANNY CLARK, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The defendants have moved for summary judgment regarding all claims asserted by Plaintiff Michael Cordle. [Record No. 31] For the reasons outlined below, the defendants' motion will be granted and this matter will be dismissed, with prejudice.

**I.**

At times relevant to this action, Plaintiff Cordle was serving a state sentence for a parole violation. Cordle was transferred to the Leslie County Detention Center ("LCDC") on December 21, 2015. The LCDC has 17 cells, including "five big cells" in which multiple inmates are housed. [Record No. 43, pp. 171-72; 100] The five big cells are divided into: (i) the work cell; (ii) state inmates and Knox County inmates; (iii) state inmates and McCreary County inmates; (iv) inmates who have violent charges and inmates who can get along with them; and (v) inmates who are sex offender, although over half of the inmates in this cell are not sex offenders because certain people can get along with them. *Id.* at p. 100.

Defendant Danny Clark is the jailer of Leslie County. Clark separates the McCreary and Knox County inmates based on his belief that the inmates from Knox County are generally

more aggressive, better fed, and in better shape. *Id*. at 101. However, he does not separate inmates by county if it would violate the classification policy. *Id*. at 169. The classification policy involves the use of information such as the inmate's charges and background. This may include medical issues and problems with other inmates. *Id*. at pp.38-39.

Cordle was placed in the second cell which housed state inmates and Knox County inmates. At the time of his intake into LCDC, he was the 25th person housed in the 20-bed cell. *Id*. at p. 46. Since all the bunks were taken when Cordle arrived, he choose to settle on a place on the floor next to the door to the work cell. [Record No. 32, p. 40-42]

According to Cordle, in January 2016, he began to notice inmates in the work cell passing tobacco to Knox County inmates Eric Johnson and Chris Evans. *Id*. at p. 41. He did not report this activity to jail officials, however, because he did not feel that it was any of his business. *Id*. at p. 42. Cordle alleges that interactions occurred with Johnson and Evans regarding his spot in front of the door, to the point where he interpreted the statements coming from the inmates as threats. *Id*. at p. 43. However, he did not report the threats to the jail staff. *Id*. He stated that he did not make reports because he figured the jail staff knew contraband was coming through the door and figured they would do something about it. *Id.* He also thought the jail personnel knew of the activity because a strip was put over the door and the smell of smoke was present. None of the defendants was aware of any alleged contraband tobacco trade coming through the door of the work cell into Cordle's cell. *See* Record Nos. 33, p. 9; 34, pp. 12-14; 35, p. 15; 36, pp. 12-13, 17; 43, pp. 112-14.

Cordle claims that Johnson and Evans attacked an inmate inside the cell in early February 2016. [Record No. 32, p. 58] All of the defendants, however, deny knowledge of this alleged attack. [Record Nos. 33, p. 12; 34, pp. 15-16; 35, p. 19; 43, pp. 115-16] Cordle

contends that in the early hours of February 6, 2016, Johnson demanded that he pack his stuff and leave the spot obstructing Johnson's access to tobacco. [Record No. 32, p. 45] Cordle supposedly refused and moved to an area visible to surveillance cameras so the cameras could record what was happening. *Id.* When Cordle walked back towards his spot, he was allegedly attacked by Johnson, which resulted in him being wrestled to the ground and rendered unconscious. *Id.* at p. 48. Cordle states that when he regained consciousness, he witnessed Evans approach from behind and strike him in the back of the head. *Id.* Cordle alleges that as he attempted to stand, Charles Gray (another Knox County inmate) hit him, again causing a loss of consciousness. *Id.* at 55-56. Cordle states that when he awoke, he remembers guards standing in the cell but at a distance. *Id.* He claims it took a long time for the guards to respond but relies on other inmates in estimating the duration of the fight. *Id.* at 54. Baker and Napier, the guards who responded to the incident, state that they ran to the cell and arrived in under a minute, after being notified by Coots who was in the control room monitoring the cameras. [Record Nos. 36, p. 18, 21; 35, p. 19] Cordle was removed from the cell, allowed to shower, and sent to a local hospital's emergency room for examination and treatment. [Record No. 36, p. 20]

After reviewing the video of the incident, Baker and Clark determined that Johnson appeared to be the only inmate involved in the altercation with Cordle. [Record Nos. 36, p. 19; 43, p. 142] Unfortunately, the LCDC could not save video in the system and it was deleted after thirty days. [Record No. 43, p. 125]

Cordle makes two federal claims under 42 U.S.C. § 1983. [Record No. 1-1] In Count I, he seeks to recover damages based on the defendants' alleged deliberate indifference to a substantial risk of serious harm. *Id.* at 6. In Count II, he asserts a deliberate indifference

standard not recognized by the Sixth Circuit to extend, modify, or revise existing law, or establish new law. *Id*. at 6-7. Cordle also makes two claims under state law. He asserts a state law negligence in Count III of his Complaint. And in Count IV, he alleges a claim of negligence *per se* against Danny Clark, in his official capacity. *Id*. at 8.

## II.

Summary judgment is appropriate when there are no genuine disputes regarding a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

A party seeking for summary judgment bears the burden of demonstrating conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party meets this production burden, the nonmoving party must come forward with significant probative evidence to defeat a properly supported motion for summary judgment. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In deciding whether to grant summary judgment, the Court views the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

# III.

## A.     Federal Claims

State governments are not subject to liability under § 1983. *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 376 (1990). However, the exclusion for state governments does not extend to municipal corporations and other similar governmental entities. *Id.* Accordingly, Leslie County and its employees are potentially liable under the statute. Nevertheless, liability is limited. Qualified immunity is available under certain circumstances for government employees sued in their individual capacities. *See Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 339 (6th Cir. 1990). And governmental entities are not subject to vicarious liability under § 1983 for the actions of their employees. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the defense is raised, the plaintiff has the burden to prove that the official is not entitled to immunity. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). Thus, viewing the facts in a light most favorable to Cordle, the Court must determine whether he has sufficiently shown that the defendants have violated his clearly established constitutional rights. *See id*.

Cordle contends that the defendants violated his Eight Amendment rights because they were aware of a substantial risk of harm posed by his fellow inmates, but failed to respond effectively. [Record No. 38, p. 17] Prison officials have a duty to "take reasonable measures

to guarantee the safety of . . . inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, not every injury suffered by one prisoner at the hands of another results in constitutional liability for the prison officials responsible for the victim's safety. *Id*. at 834. To establish a claim for failure-to-protect, an inmate must demonstrate that prison officials acted with deliberate indifference to a substantial risk of serious harm. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Deliberate indifference has an objective and a subjective component. *Id*. The objective component requires that a prisoner "show that he is incarcerated under conditions posing a substantial risk of serious harm," while the subjective component requires an inmate offer proof that a defendant knew that the plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failed to take reasonable measures to abate it." *Farmer*, 511 U.S. at 834, 847. As a judge of this court recently noted, "[t]here is some tension in Sixth Circuit case law on how to frame [the] objective inquiry." *Holder v. Saunders*, Pikeville Civ. No. 7: 13-38-ART, 2014 WL 7177957, at *5 (E.D. Ky. Dec. 16, 2014). "In one set of cases, the court looks only at whether the inmate suffered a sufficiently sever injury." In other cases, "the Sixth Circuit examines whether there was an objectively substantial risk of harm to the inmate before the injury occurred." *Id*. (citing *Curry*, 249 F.3d at 506; *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)).

A prisoner can meet his burden regarding the subjective inquiry by demonstrating that: (i) a prison official was aware of a substantial risk to a particular inmate, even if the official was unaware of who would commit the assault; or (ii) a prison official was aware that a particular inmate posed a substantial risk to a large class of inmates, even if the official was unaware of the exact prisoner at risk. *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In analyzing the subjective component, the Court must consider each defendant's knowledge individually. *See Bishop*, 636 F.3d at 767 (citing *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008); *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

Regarding Count II, Cordle argues that a new standard should apply to deliberate indifference under the Eighth Amendment. [Record No. 38, p. 35] For support, he cites several cases that have adopted an objective standard for Fourteenth Amendment pretrial detainee failure-to-protect cases. While Cordle correctly notes that the Sixth Circuit has yet to address whether an objective standard similar to that adopted in *Kingsly v. Hendrickson*, 135 S. Ct. 2446 (2015), also applies to a pretrial detainee's failure-to-protect claim, he fails to note that this case is not a Fourteenth Amendment pre-trial detainee failure-to-protect case. Cordle has plead an Eighth Amendment failure-to-protect claim. The plaintiff has not alleged facts or law that would support his claim in Count II. Therefore, that claim will be dismissed.

   1.   **The Objective Component**

Because the defendants were unaware of any specific risk to Cordle, they contend that the facts do not support the objective component of his claim. Cordle argues in response that the harm to him was objectively sufficient because he suffered a serious injury and because the defendants placed him in a cell with inmates they noted as dangerous and where contraband tobacco trade was occurring. [Record No. 17-19] As was the case in *Holder*, the Court need not resolve the inconsistency between the Sixth Circuit case law on how to frame the objective

inquiry because Cordle succeeds under either approach. *See Holder*, 2014 WL 7177957, at *5.

Cordle suffered a severe injury. He was knocked unconscious and suffered injuries to his heads, ribs, stomach, and groin. He was later transported to a local hospital, where he received staples and stiches to close his wounds, which resulted in permanent scarring. These injuries could be viewed by a jury as sufficiently severe. The defendants did not address this inquiry in their memorandum of support or reply. Regarding the risk of harm before the attack, and viewing the facts in the light most favorable to the plaintiff, a jury could find: (i) the existence of a failed classification system to separate potentially violent inmates; (ii) contraband tobacco trade; (iii) threats made to Cordle regarding the tobacco; and (iv) an alleged previous assault to objectively pose a substantial risk of serious harm. Again, the defendants neither discuss nor deny an objectively substantial risk of violence due to contraband tobacco trade occurring in the cell in which Cordle was housed.

### 2. The Subjective Component

Cordle claims that the defendants failed to implement a classification system to segregate potentially violent inmates from other detainees. [Record No. 38, p. 21] He also contends that the defendants were aware that Knox County inmates presented a high risk to others, but failed to act to protect him. *Id*. at 24. Additionally, Cordle claims that the defendants were aware of, or had available to them, facts indicating a risk based on the defendants' purported subjective belief regarding Knox County inmates' dangerousness and their involvement in "contraband tobacco trade." *Id*. at 28. Finally, Cordle contends that when Defendants Coots, Napier, and Baker became aware of the assault, they failed to respond

appropriately. But Cordle's claims of deliberate indifference against all defendants fail under any theory he has espoused.

### a) Jackie Coots

Jackie Coots was employed as a deputy jailer at the LCDC. Cordle fails to satisfy the subjective component of the deliberate indifference test with respect to Defendant Coots. There is no evidence that Coots had any indication of any risk of serious harm associated with the classification procedure used at the LCDC, or that he disregarded such risk. No evidence was presented that Coots was involved in Cordle's booking or classification. And Cordle has failed to offer any evidence that Coots subjectively believed Knox County inmates were dangerous or posed a substantial risk to him.

The record is devoid of evidence that Coots was aware of prior assaults involving Johnson, Evans, or Gray. Likewise, no evidence has been produced to indicate that Coots knew that these inmates were involved in an alleged contraband tobacco trade. In fact, Coots testified that he had no knowledge of a prior assault involving these inmates. [Record No. 34, pp. 15-16] Additionally, he stated he had no knowledge that the subject inmates were involved with any sort of contraband. Instead, the only time he can recall every catching an inmate with tobacco was inside the work cell. *Id*. at pp. 12-13. Further, Coots stated that the strip placed under the door of the work cell (and the cell where Cordle was housed) was used keep the inmates from throwing water under the door. *Id*. at pp. 13-14.

Finally, there is no evidence that Coots failed to respond appropriately to the assault in issue. Coots testified that, during the incident, he was in the control room. When he noticed the fight, he was on the phone with booking and notified Baker and Napier of the incident. *Id*. at p. 20. He testified that fight lasted approximately one minute and had ended by the time

Baker and Napier arrived. *Id*. at p. 21. While Cordle alleges that the fights lasted much longer, his recollection was dim on this point. [Record No. 32, p. 54] In fact, the only information comes from inmates who indicated that it lasted seven to ten minutes. And these inmates were not deposed. *Id.* at p. 55.

Cordle claims that an issue of material fact exists because the time logs used by the defendants differ with respect to the exact time he was removed from the cell. [Record No. 38, p. 31] However, he offers no evidence that would meet the subjective inquiry regarding his response to the altercation sufficient to demonstrate that Coots acted with deliberate indifference to a substantial risk of serious harm. As a result of this failure, Coots is entitled to qualified immunity with respect to the § 1983 claim.

### b) Will Baker

Like Defendant Coots, Defendant Will Baker was employed as a deputy jailer at the LCDC at the time of the incident in question. Cordle fails to satisfy the subjective component of the deliberate indifference test with respect to Defendant Baker. There is no evidence that Baker had any indication of any risk of serious harm associated with the classification procedure used at the LCDC or that he disregarded such risk. No evidence was presented that Baker was involved in Cordle's booking or classification. Additionally, there is no evidence that Baker subjectively believed Knox County inmates were dangerous or posed a substantial risk to Cordle.

No evidence has been offered that Baker was aware of prior assaults involving Johnson, Evans, or Gray, nor has any evidence been produced to support a claim that Baker knew the inmates were involved in contraband tobacco trade. Instead, Baker testified that he had no specific recollection of the three inmates and denied knowledge that they were involved with

any sort of contraband. Further, he has never found tobacco in the jail. [Record No. 36, p. 12-13] And Baker also believed that the strip placed under the door of the work cell was intended to prevent inmates from throwing water under the door. *Id*. at p. 17.

Finally, there is no evidence that Baker failed to respond appropriately to the assault. Baker testified that, during the incident, he was notified by Coots that a fight was in progress and he responded with Napier. *Id*. at p. 18. Cordle met them as they entered the cell holding a hand above his eye. *Id*. While he could not testify as to the time it took to get to the cell, he offered that he ran to the area after receiving notice of the fight and estimated that it took well under a minute to get there. *Id*. at p. 21. And the fight had ended by the time he arrived. *Id*. As stated above, although Cordle alleges that the fights lasted much longer, his estimates are based on second-hand statements of inmates who have not been deposed.

Again, while Cordle asserts that a factual dispute has been presented based on differing logs regarding the exact time he was removed from the cell, he has failed to offer sufficient evidence to demonstrate that Baker acted with deliberate indifference to a substantial risk of serious harm to him. As a result, Baker is entitled to qualified immunity with respect to the § 1983 claim.

### c) Josh Napier

Defendant Josh Napier was also employed as a deputy jailer at the LCDC at the time of the alleged assault. Cordle also fails to satisfy the subjective component of the deliberate indifference test with respect to Defendant Napier. No evidence has been offered to demonstrate that Napier had any indication of a risk of serious harm associated with the classification procedure used at the LCDC, or that Napier disregarded such risk. Likewise, no evidence has been presented that Napier was involved in Cordle's booking or classification.

And Cordle has failed to offer any evidence that Napier subjectively believed Knox County inmates were dangerous or posed a substantial risk to Cordle.

No evidence has been produced that Napier was aware of prior assaults involving Johnson, Evans, or Gray. And no evidence has been produced that shows Napier knew the inmates were involved in the alleged contraband tobacco trade. Instead, Napier testified that he had no specific recollection of the three inmates and no knowledge that they were involved in any sort of contraband trade. [Record No. 35, p. 14-15] According to Napier, he has only found tobacco on inmates on two occasions and has never found an inmate smoking tobacco. *Id*. at p. 16-17. Further, he testified that he has no knowledge of any prior assaults involving Johnson, Evans, and Gray. *Id*. at p. 19.

There is no evidence that Napier failed to respond appropriately to the assault. Napier testified that he was notified by Coots that a fight was in progress and he responded with Baker. *Id*. at p. 19. Again, Cordle met them as they entered the cell, holding a hand above his eye. *Id*. He also estimated that it took well under a minute to reach the cell following notice of the fight, and the fight had ended by the time he arrived. *Id*. at p. 19-20. As explained above, Cordle's argument that a material issue of fact exists based on time logs is insufficient to meet his burden of proof. Because the evidence is insufficient to show that Napier acted with deliberate indifference to a substantial risk of harm to Cordle, Napier is entitled to qualified immunity with respect to the § 1983 claim.

### d) Ashton Lewis

At the time of the alleged assault, Defendant Aston Lewis was a deputy jailer at the LCDC, holding the rank of Sergeant. Cordle fails to satisfy the subjective component of the deliberate indifference test with respect to Defendant Lewis. There is no evidence that Lewis

had any indication of any risk of harm associated with the classification procedure used at the LCDC. Likewise, there is no proof that Lews disregarded such risk. No evidence was presented that Lewis was involved in Cordle's booking or classification. Additionally, Cordle produced no evidence that Lewis subjectively believed that Knox County inmates were more dangerous than other inmates housed at the LCDC or posed a substantial risk of injury to Cordle.

No evidence has been produced that Lewis was aware of prior assaults involving Johnson, Evans, or Gray and no evidence has been presented that Lewis knew that these inmates were involved in contraband tobacco trade at the facility. Lewis testified that he had no specific recollection of the three inmates and no knowledge that they were involved in contraband trade. [Record No. 33, p. 8-9] Lewis testified that he has found small amounts of tobacco in the work cell during cell searches but has never found an inmate smoking tobacco. *Id*. at pp. 9-10. Further, Lewis testified that he has no knowledge of any prior assaults involving the inmates in issue. *Id*. at p. 12. Finally, on the day of the alleged assault, Lewis was not on shift at the jail. *Id.* at p. 13. Because Cordle has offered no evidence of deliberate indifference regarding Lewis, he is entitled to qualified immunity with respect to the § 1983 claim.

e) **Danny Clark and Leslie County**

Cordle fails to satisfy the subjective component of the deliberate indifference test with respect to Defendant Clark. Like the other individual defendants, there is no evidence that Clark had any knowledge or indication of a risk of serious harm associated with the classification procedure used at the LCDC or that he disregarded such risk. Cordle alleges that since the classification policy, in practice, only addressed crimes charged and an inmate's

county of origin, it was not based on objective criteria. Thus, he asserts that the practice presented a substantial risk of harm. However the policy is based on objective criteria. Clark stated that when classifying new inmates, jail personnel must have knowledge of the nature of the charge(s) and some information about the inmate's background, such as whether the individual has had problems with other inmates or presents medical issues. [Record No. 43, pp. 38-39]

Cordle relies on a vacated opinion from the Northern District of Ohio in support of his contention that the LCDC's policy presents a substantial risk of harm to inmates of which the defendants were aware. [Record No. 38, p. 22] In *Peart v. Seneca Cnty*, the court found that there was a complete abandonment of any effort to classify inmates. 800 F.Supp.2d 1028, 1035 (N.D. Ohio 2011), *vacated due to settlement between the parties*, 2012 U.S. Dist. Lexis 184998 (N.D. Ohio Oct. 12, 2012). Here, however, there is no evidence that a complete abandonment of any effort to classify inmates took place. And while Cordle takes issue with the barebones policy being used, he has failed to provide any evidence regarding how the alleged shortcomings in the classification policy created a substantial risk of serious harm. He does not attempt to propose criteria that should have been used or explain how such criteria would have prevented him from encountering the inmates involved in the subject assault. His conclusory allegations that the policy created a risk cannot support a finding that the LCDC's classification policy created a substantial risk of serious harm which was known to Clark or about which he disregarded.

Cordle has presented no evidence of Clark's knowledge of prior assaults or incidents which could be construed as resulting from the classification policy. In fact, no evidence has been presented from which a reasonable juror could conclude that Clark was on notice that the

classification policy was potentially substandard. While the State Inspector Report indicated that the only criteria used in classification concerns whether the inmate has a conflict with another inmate and current charges, this report relies on an inspection completed two months after the alleged assault. Cordle did not present any evidence regarding whether the conditions of the jail were the same during the relevant period and did not ask Clark about the conditions identified in the report. This does not demonstrate that Clark acted with deliberate indifference to a substantial risk of serious harm based on the classification system.

While Cordle spends much time addressing Clark's statement that Knox County inmates were "aggressive," he ignores the fact that the statement was made while discussing the difference between McCreary County inmates and Knox County inmates, and why the inmates from the two counties are placed in different cells. [Record No. 43, p. 101] Cordle seeks to draw an inference that this statement leads to the conclusion that Clark has the subjective belief that Knox County inmates Johnson, Evans, and Gray were too dangerous to be placed with other inmates. [Record No. 38, p. 25] But this is simply an inference without a factual basis. As Clark explained later in his deposition, in some instances, he attempted to keep inmates from Knox County together, but he would not do so if it violated the classification policy. [Record No. 43, p. 169] For example, Clark was asked if he would put a convicted murderer from Knox County in the same cell as a first-time DUI arrestee from Knox County, simply because both inmates would be from Knox County. He stated in response that he would not, and would abide by the safety considerations of the classification system. *Id*. The fact that Clark prefers to separate McCreary and Knox County inmates has no bearing on the classification and placement of Cordle -- an inmate from neither county. This does not demonstrate that Clark acted with deliberate indifference to a substantial risk of serious harm

based on an alleged subjective belief that Knox County inmates were more dangerous and posed a substantial risk of harm to Cordle.

No evidence has been produced that Clark was aware of prior assaults involving Johnson, Evans, or Gray, nor has any evidence been produced that showed Clark knew the inmates were involved in alleged contraband tobacco trade. And Clark he had no knowledge that the subject inmates were involved with any sort of contraband. *Id*. at p. 112. He testified that he has no knowledge of any prior assaults involving Johnson, Evans, and Gray. *Id*. at pp. 115-116. According to Clark, the strip that was placed under the door of the work cell and the cell where Cordle was housed was used to keep the inmates from throwing water under the door. *Id*. at 113. And even if inmates were passing tobacco through the door, his deputies would not have known about it because an inmate is not going to tell you they are getting tobacco. *Id*. at 113-114. Finally, on the day of the alleged assault, Clark was not at the jail. *Id.* at p. 123. Thus, Clark is entitled to qualified immunity with respect to the § 1983 claim because Cordle had offered no evidence to demonstrate that Clark acted with deliberate indifference to a substantial risk of serious harm.

Cordle also alleges that Leslie County is liable under § 1983. The county may be held liable under § 1983 based on "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers." *Adkins v. Bd. of Educ.,* 982 F.2d 952, 957 (6th Cir.1993) (quoting *Monell,* 436 U.S. at 690). Relying on the Supreme Court's plurality decisions in *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), and *City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988), the Sixth Circuit has held that a single act of a local official may establish that his employer adopted an unconstitutional policy if the official has "final

policymaking authority." *Adkins,* 982 F.2d at 957–58. "[W]hether an official has such final authority is a question of state law." *Id.* at 957 (citing *Pembaur,* 475 U.S. at 483).

But there can be no liability under *Monell* unless there is an underlying constitutional violation. *Baynes v. Cleland*, 799 F.3d 600, 622 (6th Cir. 2015). Cordle has failed to present facts upon which a reasonable juror could conclude that the individual defendants conduct constituted deliberate indifference to a substantial risk of serious harm to Cordle under the Eight Amendment. Accordingly, no liability exists for Leslie County.

**B.    State Law Claims[1]**

**1.    Sovereign Immunity for Leslie County**

"When assessing whether defendants are entitled to immunity from state law tort liability, the court must apply Kentucky rules of sovereign immunity." *Ivey v. McCreary Cnty. Fiscal Court*, 939 F. Supp. 2d 762, 765 (E.D. Ky. 2013). Under Kentucky law, county governments are protected by sovereign immunity. *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003). And absent a legislative waiver, county governments cannot be held vicariously liable for the ministerial acts of their employees. *Id*. Cordle does not argue that Kentucky's legislature has waived Leslie County's sovereign immunity. Therefore, because Leslie County may properly claim sovereign immunity regarding Cordle's state law tort claims, its motion for summary judgment will be granted regarding those claims.

---

[1] The defendants also moved for summary judgement on Cordle's state law negligence *per se* claim. Cordle abandoned this claim in response. [Record No. 38, p. 38] Therefore, the claim will be dismissed.

### 2. Official Capacity Claims against Clark

Under Kentucky law, "[t]he absolute immunity from suit afforded to the state also extends to public officials in their representative (official) capacities, when the state is the real party against which relief in such a case is sought." *Yanero v. Davis*, 65 S.W.3d 510, 518 (Ky. 2001). Thus, Clark is protected by the same sovereign immunity asserted by Leslie County, and summary judgment will be granted regarding Cordle's state law claim against him in his official capacity.

### 3. Qualified Immunity

Kentucky's qualified immunity doctrine protects individual officers from liability for their negligent performance of: (i) discretionary acts or functions, (ii) made in good faith, (iii) within the scope of their authority. *Yanero*, 65 S.W.3d at 522. An act is discretionary if it requires the exercise of judgment or personal deliberation. *Id*. Conversely, qualified immunity in not available "for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id*. The defendants make no attempt to argue that failure to classify inmates appropriately is a discretionary function entitling them to qualified immunity. As a result, the Court will review the merits of the individual claims.

### 4. Negligence Claims

Cordle alleges that defendants were negligent by failing to follow Kentucky laws and regulations, failing to follow their own policy, and by improperly classifying the Knox County inmates. [Record No. 38, p. 36] Negligence requires proof of: (i) a duty owed by the defendant to the plaintiff; (ii) breach of the duty; (iii) injury to the plaintiff and (iv) legal causation

between the defendant's breach and the plaintiff's injury. *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). Generally, each person owes a duty to every other person to exercise ordinary care to prevent foreseeable injury. *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky. 1999). And based on the "special relationship" between jailer and inmate, the defendants had a duty to protect Cordle from foreseeable harm. *See Fryman v. Harrison*, 896 S.W.2d 908, 909–10 (1995).

The defendants suggest that an expert opinion is required to establish the applicable standard of care in this case. [Record No. 32-1, p. 29] However, they rely on a medical negligence case to support this assertion. *Id.* (citing *Green v. Owensboro Health Sys., Inc.*, 231 S.W.3d 781, (Ky. Ct. App. 2007)). In cases involving professions requiring special skill and expertise, the standard of care is usually measured by the conduct customary in the profession under the circumstances. *See Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 113 (Ky. 2008). But expert testimony is not required in cases where issues are within the common knowledge of lay persons or when the alleged negligence of a professional is so apparent that even a lay person could recognize it. *Baptist Healthcare Sys., Inc. v. Miller*, 177 S.W.3d 676, 681 (Ky. 2005). The issues involved in this case are within the understanding of everyday citizens, and expert testimony is not required to establish the standard of care.

Cordle has not identified a genuine issue of material fact indicating the defendants breached their duty to prevent foreseeable harm to him. Rather than identify specific evidence connecting the defendants actions to the assault, the plaintiff makes references to the existence of material fact regarding whether the defendants were subjectively aware of the harm to Cordle based on their alleged failure to implement an objective classification policy. As previously discussed, no evidence has been produced that Defendants Coots, Baker, Napier,

or Lewis were involved in the classification of Cordle or were even aware any harm that may occur because of an alleged misclassification. Additionally, and as previously discussed, Cordle has failed to present any evidence that the Knox County inmates were inappropriately classified, or that the classification that did occur resulted in foreseeable harm. Instead, he relies upon unreasonable inferences which are insufficient to overcome the defendants' request for entry of summary judgment.

IV.

For the reasons outlined above, it is hereby

**ORDERED** as follows:

1. The defendant's motion for summary judgment [Record No. 31] is **GRANTED**.

2. The defendants' motion in limine [Record No. 52] is **DENIED** as moot.

3. Plaintiff Michael Cordle's claims are **DISMISSED**, with prejudice.

4. This action is **DISMISSED**, with prejudice, and **STRICKEN** from the docket.

5. The trial of this action, previously scheduled to begin on March 5, 2018, is **CANCELED**.

This 20th day of February, 2018.

